IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAUD SHAKH AKHMAD ROSHAN,                    )
                                             )
              Petitioner,                    )
                                             )
      v.                                     )        1:26-cv-1416 (LMB/LRV)
                                             )
TODD BLANCHE, et al.,                        )
                                             )
              Respondents.                   )

ORDER

Petitioner Daud Shakh Akhmad Roshan ("Roshan"), a native of Afghanistan, has filed a

Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that

he has been illegally detained by the U.S. Department of Homeland Security's ("DHS")

Immigration and Customs Enforcement ("ICE") agency since May 2026.  Specifically, he alleges

that his continued detention violates the Immigration and Nationality Act, the Administrative

Procedure Act, and his due process rights.

Roshan is currently detained at the Farmville Detention Center, which is within the

Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the

Farmville Detention Center.  Roshan has also sued Todd Blanche, the Acting Attorney General;

Markwayne Mullin, the DHS Secretary; Todd Lyons, the Acting Director of ICE; and Joseph

Simony, the Director of the Washington ICE Field Office (collectively, "the federal

respondents").  For the reasons discussed in this Order, the Court finds that the process the

federal respondents used to revoke Roshan's parole violated the Fifth Amendment.  Accordingly,

Roshan's Petition will be granted, and the federal respondents will be ordered to release him

from custody immediately.

I.

The following facts are undisputed. Roshan was born on May 1, 2004 in Kabul, Afghanistan. [Dkt. No. 1] at ¶ 18; [Dkt. No. 1-3]. In 2023, Roshan decided to flee Afghanistan "after suffering targeted persecution, detention, and torture at the hands of the Taliban . . . as a direct result of his father's journalism for United States-funded media organizations." [Dkt. No. 1] at ¶ 3. Based on his immigration documents, it appears that Roshan crossed the border from Mexico to the United States and presented himself to immigration authorities at the San Ysidro Port of Entry in California. Id. ¶ 21; [Dkt. No. 1-5]. On October 5, 2023, Roshan was issued a Notice to Appear that charged him with being inadmissible to the United States under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. [Dkt. No. 1-5]. On October 25, 2023, DHS issued to Roshan an Interim Notice Authorizing Parole ("Interim Notice"), stating:

> This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act. This notice is being issued to you in lieu of Form I-94, *Arrival-Departure Record, see* 8 C.F.R. § 235.1(h)(2), and you should maintain a copy of this letter in your possession at all times.

> Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion. ICE may also terminate parole on notice prior to the automatic termination date. Parole is entirely within the discretion of ICE and can be terminated at any time and for any reason. Your parole is not valid for work authorization and is not an admission in lawful status.

> Parole is conditioned on you complying with the terms and conditions of your release. You must notice ICE and the immigration judge of any address correction or address change. You must report for every scheduled hearing before the immigration court and every appointment as directed by ICE (including for removal from the United States should you become subject to a final removal order). You must not violate any local, State, or Federal laws or ordinances. You must comply with any other specified conditions if identified separately.

[Dkt. No. 1-8].[1] Under the Interim Notice, Roshan's parole purportedly terminated on October 25, 2024; however, there is nothing in the record before the Court indicating that DHS contacted Roshan at the end of the one-year period, and Roshan appears to have remained on parole without incident until he was arrested by ICE in May 2026.[2] [Dkt. No. 1] at ¶ 24.

Roshan filed his Petition for Writ of Habeas Corpus on May 25, 2026. [Dkt. No. 1]. The Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to file a responsive pleading. [Dkt. No. 2]. In response, the federal respondents filed an opposition, arguing that Roshan's parole was lawfully revoked and that he is now detained under 8 U.S.C. § 1225(b)(1). [Dkt. No. 4]. Finding oral argument will not assist the decisional process, the Petition will be resolved on the papers submitted.

## II.

The central question posed in this Petition is whether Roshan's continued detention violates the Fifth Amendment. In Pineda-Berrios v. Lyons, the Court analyzed the procedures the federal respondents used to revoke a noncitizen's humanitarian parole under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and concluded that the unilateral revocation of the noncitizen's parole without "individualized consideration" and an "opportunity to be heard" deprived him of due process. 2026 WL 384159, at *5. That same analysis applies here.

---

[1] Section 212(d)(5)(A) of the INA is codified at 8 U.S.C. § 1182(d)(5)(A).

[2] Roshan has an application for asylum, withholding of removal, and protection under the Convention Against Torture pending before the immigration court. [Dkt. No. 1] at ¶ 22. "His asylum claim is based on his imputed political opinion and membership in cognizable particular social groups, including: (a) family members of journalists affiliated with U.S.-backed media; (b) individuals perceived to be pro-Western or Westernized youth; and (c) returnees from the West or Gulf who defy Taliban customs." Id.

3

First, Roshan has a significant liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). In the parole context, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Subject to the conditions of parole, a parolee "is free to be with family and friends and to form the other enduring attachments of normal life." Id. And noncitizens paroled into the United States under § 1182(d)(5)(A) may be eligible for certain federal public benefits, 8 U.S.C. §§ 1611(a), 1641(b)(4); can apply for adjustment of status under 8 U.S.C. § 1255(a); and can seek employment authorization, 8 C.F.R. § 274a.12(c)(11).

Roshan's liberty interest does not vanish simply because DHS's authority to revoke parole is partially discretionary. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); M.B. v. Noem, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2025) ("[O]nce the government exercises its discretion in ways that create constitutional rights, the fact that the government retains statutory discretion does nothing to supplant those previously created rights."). Rather, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Nor does the Interim Notice's one-year limitation "somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." L.M. v. Noem,

4

2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026); accord Martinez-Gutierrez v. Noem, 2026 WL 279890, at *3 (E.D. Cal. Feb. 3, 2026) (holding that the Interim Notice's expiration date "does not mean Petitioner lacks a protected liberty interest"). As an initial matter, although the Interim Notice suggests a contrary position, 8 C.F.R. § 212.5(e) requires DHS to engage in a "case-by-case determination before parole can lawfully be revoked." Orellana v. Francis, 2025 WL 2402780, at *5 (E.D.N.Y. Aug. 19, 2025). DHS cannot simply tack on a one-year limitation to the grant of parole without considering Roshan's individualized circumstances and whether the purposes of parole would be accomplished within one year. Moreover, Roshan continued to "establish[] a life for himself" in the United States after the one-year period lapsed "based on the implied promise that he would remain released in spite of the dated expiration."[3] Martinez-Gutierrez, 2026 WL 279890, at *3. For these reasons, Roshan's "liberty interest did not expire along with his parole." Omer G.G. v. Kaiser, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).

Second, the procedures used to revoke Roshan's parole significantly risked erroneously depriving him of his liberty interest in remaining out of custody. At the outset, it is unclear which procedures the federal respondents claim to have used in revoking Roshan's parole. When Roshan was paroled on October 25, 2023, he was issued an Interim Notice stating that his "parole authorization [was] valid for one year" and would "automatically terminate . . . at the end of the one-year period." [Dkt. No. 1-8]. On October 25, 2024, nothing happened, which is unsurprising given that the Interim Notice did not specify what would happen at the end of the

_____

[3] The Interim Notice stated that parole expired on October 25, 2024, [Dkt. No. 1-8]; however, Roshan was not detained by ICE until May 2026.

one-year period. In fact, it was not until a year and a half after Roshan's parole purportedly terminated that Roshan was arrested by ICE agents.

To the extent the federal respondents claim that the one-year limitation revoked Roshan's parole, it strains credulity to contend that the Interim Notice adequately protected his liberty interest in remaining out of custody. Roshan's grant of parole was premised on the determination that he did not pose a safety risk or a flight risk. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). There is absolutely no evidence in this record that any DHS officer "based the one-year parole period on any determination that the risk-reward calculus would change after one year." Qasemi v. Francis, 2025 WL 3654098, at *13 (S.D.N.Y. Dec. 17, 2025); see Rodriguez-Acurio v. Almodovar, 2025 WL 3314420, at *2 (E.D.N.Y. Nov. 28, 2025). Nor has any immigration officer "articulated that the humanitarian reasons and public benefit that supported [Roshan's] release no longer exist." Qasemi, 2025 WL 3654098, at *13; accord Pinchi, 792 F. Supp. 3d at 1035 (finding a due process violation where the respondents "offered no evidence" that detention would "prevent flight or protect against danger to the community"). To the contrary, on the record before the Court, there is no evidence of Roshan being arrested for, or committing, any crime during the approximately 30 months that he remained in society and no indication that he missed any required appointments with immigration officials or violated any of the conditions of his parole.

To the extent the federal respondents claim that Roshan's May 2026 arrest revoked his parole, that argument fails because there is no evidence in the record before the Court to suggest that any DHS officer has conducted an individualized determination of Roshan circumstances before he was arrested. On this record, it is easy to see how any additional procedure would be valuable where, as here, "the only procedure required for the deprivation of [petitioner's] liberty

6

appears to be an unreviewable decision by an agency official subject to no formal procedures or review." L.M., 2026 WL 103231, at *13.

Third, the federal respondents' interest in detaining Roshan without any semblance of due process is nonexistent. Of course, they have "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). And although the federal respondents have a "weighty" "interest in efficient administration of the immigration laws," Landon v. Plasencia, 459 U.S. 21, 34 (1982), they "remain subject to an obligation to 'effectuate [Roshan's] detention in a manner that comports with due process,'" Abadin v. Noem, 2026 WL 217148, at *4 (W.D. Wash. Jan. 28, 2026) (citation omitted). Nothing in this record explains why the federal respondents are "unable to efficiently enforce the immigration laws . . . while also affording individuals with their 'core' due process right: 'notice and an opportunity to be heard.'" Make the Rd. N.Y. v. Noem, 2025 WL 2494908, at *19 (D.D.C. Aug. 29, 2025) (quoting LaChance v. Erickson, 522 U.S. 262, 266 (1998)).

In sum, although the federal respondents have discretion to release a noncitizen on parole, that does not mean they can revoke that parole on a mere whim, which is what has happened in this case. Accordingly, Roshan's continued detention violates the Due Process Clause, and he must be released from custody immediately.

III.

For all the reasons stated above, Roshan's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

7

ORDERED that the federal respondents release Roshan from custody with all his personal property subject to the conditions of his preexisting parole, except for the expiration date, no later than 4:00 p.m. on June 4, 2026; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Roshan unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the expiration date; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e) and the Due Process Clause.

The Clerk is directed to enter judgment in Roshan's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 3rd day of June, 2026.

Alexandria, Virginia

/s/

**Leonie M. Brinkema**
**United States District Judge**

8